Attorney At Law

123 West 94th Street

New York, New York 10025

Phone:  (646) 729-8180

Fax:  (212) 504-8341

Email: alexei@schachtlaw.net

January 30, 2023

**BY ECF**

The Honorable Richard M. Berman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> **Re:    United States v. Ephraim Joseph Ullmann**
> **22 CR 00003 (RMB)**

Dear Judge Berman:

This Sentencing Submission is made on behalf of the defendant, Ephraim Ullmann ("the defendant" or "Ephraim", herein) in connection with his sentence hearing that is scheduled for February 14, 2023. I am filing some of the Exhibits with redactions, as they contain highly personal or medical or other identifying information but I am supplying the Court and counsel with unredacted copies by email.

As discussed in detail below, we ask your Honor to sentence Ephraim primarily to a non-Guidelines sentence of home incarceration, supervision, community service and restitution.

This Memorandum begins with a recitation of important issues in the defendant's life, some aspects of his personal history, facts concerning the crime, and his efforts at rehabilitation, and it then turns to a discussion of the legal framework and sentence guidelines that we ask the Court to use in analyzing the case. We finish with a discussion of the relevant sentencing factors and why a non-prison sentence is fair, just and reasonable.

The Honorable Richard M. Berman
January 30, 2023
Page 2 of 9

Ephraim Ullmann's Life

The defendant was born in Israel about two months after his father, an Israeli soldier, was killed in action. While his mother remarried for religious reasons, he reports to me that she lived the rest of her life under a cloud of sadness that never really lifted. And while Ephraim always had food and shelter as a child he was himself deeply upset by his father's early death and the fact that

he never knew him. Ephraim's mother committed suicide about 19-years later and Ephraim and his siblings discovered her body. He still can barely talk about this experience and it has obviously traumatized him deeply and permanently. He has sought solace in his religious devotion, but his wife Rivka has also talked about the fact that he may have abused alcohol as another less healthy coping mechanism. This appears to be something that he (and possibly she) may be in denial about (*see generally* paragraphs 82, 92-94, of the Probation Report).

Despite experiencing these awful tragedies in his life, Ephraim managed to meet a nice vivacious woman who became his wife. They have a smart and accomplished but chronically ill daughter who lives with them (*see generally* paragraph 81 of the Probation Report). Most significantly, Rivka suffers from multiple sclerosis, an awful degenerative neurological disease. She has had this illness for close to 18 years and there is no cure. The disease simply gets worse over time and may be managed somewhat with medicine and other treatments and care. Ephraim cares for his wife in many ways but he is also her primary home caregiver; they are not rich and cannot afford the kind of daily non-medical care that she requires. Her doctor, Brian Apatoff, MD, has written a letter summarizing these issues (Exhibit A).

In short, Rivka and Ephraim are terrified of what may happen to Rivka and their daughter if he is incarcerated. With that in mind, I turn to a brief discussion of some of the case's facts relevant to sentencing.

Some Relevant Facts Concerning the Crime

The defendant was arrested on a complaint on about August 4, 2021. Later, an indictment was filed that that alleged criminal conduct occurring between about November of 2014 and 2020. But the actual criminal conduct occurred mainly between 2014 and 2018 (*see generally* paragraph 15, of the Probation Report) and mostly in the 2014 to 2016 time period (*see generally* paragraphs 16-29, of the Probation Report). And the FBI's investigation began in 2019 about (*see generally* paragraph 10, of the Probation Report), after the defendant ceased committing the fraud.

The Honorable Richard M. Berman
January 30, 2023
Page 3 of 9

Of course, the defendant did not voluntarily disclose the crime to the authorities but the bulk of his criminality was limited to helping co-defendant John Rice to steal money from the victims. Of course, the defendant deserves no awards for this but we ask that the Court consider that his personal profit was less than about $60,000 for this over $3 million fraud. Rice stole almost all the money as the Report makes plain, and the third co-conspirator CC-1 profited much more than Ephraim as well. Indeed, Ephraim was so foolish to commit this crime as he might have made the same amount of money working legally.  The main points being that he personally profited very little and really committed the crime quite some time ago.

Efforts at Rehabilitation

I urge the Court to read carefully the beautiful letter submitted by The Aleph Institute (Exhibit B) on behalf of Ephraim. This letter seeking lenience lays out carefully my client's background and the steps he has taken to rehabilitate himself. Indeed, rehabilitation is not exactly the right word inasmuch as Ephraim seems to have always been an excellent caring person who simply made a terrible decision to commit a crime out of misguided desperation and in an attempt to help his family in some way.  This awful choice harmed his victims, himself and his family. But I hope the letter expresses clearly that he is remorseful and serious about bettering himself and not ever doing anything like this again.


The Sentencing Guidelines Framework That Applies in This Case

As the Report states, the parties agree that the correct base offense level is 7 and because the intended loss amount exceeded $1,500,000 but was not greater than $3,500,000 (16 levels); and because the offense involved sophisticated means (2 levels). The parties further agree that a combined 3-level downward adjustment is appropriate because the defendant has accepted responsibility for his crime. These calculations result in an agreed upon adjusted offense level of 22 which has a suggested range of 41 to 51 months in prison.

Ephraim fully acknowledges that his participation in this fraud is a serious offense. Because of his and the co-conspirators' actions, real people lost a large amount of money. However, we ask that Ephraim's punishment be in proportion to his level of wrongdoing. Here, application of the advisory Guidelines does not result in a fair and just sentence. These Guidelines and relevant sentencing laws, and the facts to which they must be applied, are discussed below.

The Honorable Richard M. Berman
January 30, 2023
Page 4 of 9

The Correct Legal Framework for Sentencing Analysis

As your Honor is well aware, a "sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc). The Court must consider each of the factors set forth in 18 U.S.C. § 3553(a) to make an individualized sentencing determination. *See **United States v. Booker***, 543 U.S. 220, 245-46 (2005); *Gall v. United States*, 552 U.S. 38, 59 (2007). The Court should begin by calculating the applicable Sentencing Guidelines range. However, "[t]he Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009). Rather than relying on the Guidelines, a sentencing court must make an individualized assessment as to the appropriate sentence based on the facts presented in light of each of the factors set forth in § 3553(a).

Rather than relying on the Guidelines, a sentencing court must make an individualized assessment as to the appropriate sentence based on the facts presented and in light of each of the
factors set forth in § 3553(a). The Court may impose a non-Guidelines sentence based entirely on policy considerations, including disagreements with the Guidelines. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). This is particularly true when considering Guidelines that are not based on the Sentencing Commission's traditional empirical and experiential study. *See id.* at 109.

Section 3553(a)(2) states that the purposes of sentencing are:

(A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)      to afford adequate deterrence to criminal conduct;

(C)      to protect the public from further crimes of the defendant; and

(D)      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

To determine a sentence that best comports with these goals, the Court should, among other factors, consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the kinds of

The Honorable Richard M. Berman
January 30, 2023
Page 5 of 9

sentences available and the sentencing range established in the Sentencing Guidelines and (3) the need to avoid unwarranted sentence disparities among

similarly situated defendants. *See* 18 U.S.C. § 3553(a)(1), (a)(3)-(7). We will focus on these factors below. Under the statutory parsimony clause, the Court should order a sentence that is "sufficient, but not greater than necessary." With these standards in mind, we describe how the law applies to the facts in this case.

Perhaps the primary reason for a non-Guidelines sentence here is that Ephraim's wife and daughter will suffer, and possibly irreparably, if he is incarcerated (*see* his wife's letter – Exhibit C). Related to that in a way is the fact that a prison sentence is simply more than is necessary to achieve the goals of sentencing. The defendant was one of three co-conspirators who committed this crime and he is arguably the least involved and certainly obtained the least profit from the crime.

Codefendant John Rice appears to be a career grifter who has had a string of civil fraud cases (*see e.g.*, https://casetext.com/case/sfr-holdings-ltd-v-rice-9). Ephraim by contrast has led an otherwise exemplary life.

However, should the defendant be sentenced to a term of incarceration we ask your Honor sentence him to less than you otherwise might as his conditions of confinement will almost certainly be worse than in the pre-pandemic era. For example, right now possible prisons that someone like him (a non-violent first-time offender) might be designated to are closed or having limited visitation, such as FCI Schuylkill which is closed for visits. *See* https://www.bop.gov/locations/institutions/sch/. FCI Danbury is at a level-2 modified status and it would be hard for him to be visited there. *See* https://www.bop.gov/locations/institutions/dan. And of course the chance of getting COVID in these settings is higher than at one's own home. *See e.g.*, https://www.nytimes.com/2023/01/26/us/politics/covid-outbreak-guantanamo.html?referringSource=articleShare.

Because of these sorts of conditions, judges in this District have acknowledged that pandemic era jail conditions might constitute extreme punishment beyond what the law requires and that the trauma experienced by an inmate as a result of pandemic-related isolation and fear of infection at can be the basis for a lower sentence. *See e.g.*, **United States v. Matute**, 16 Cr. 809(VM)(S.D.N.Y. Sept. 11, 2020). Indeed, courts in this district have granted downward variances at sentencing on the basis of the harsh conditions at local detention facilities both before and during the coronavirus pandemic. *See, e.g.*, **United States v. Paez Vazquez**, 20 Cr. 28 (JPO) (sentence of time

The Honorable Richard M. Berman
January 30, 2023
Page 6 of 9

served,approximately six months, despite Guidelines range of 87 to 108 months, taking into account difficult conditions at the MCC during the COVID-19 pandemic); *United States v. Morgan*, 19 Cr. 209 (RMB) (considering awful conditions at MDC before and during COVID-19 pandemic and imposing sentence of time served,

less than 15 months, where stipulated Guidelines range was 33-41 months and actual applicable Guidelines range was 41-51 months); *United States v. Casillas*, 19 Cr. 863 (VSB) (S.D.N.Y. May 4, 2020) (time-served sentence of approximately five months where Guidelines range was 15-21 months, in part based on conditions at MCC during the pandemic).

Ephraim does not pose a particular risk of recidivism. This is his first contact with the criminal justice system and his first conviction. The Court can have every confidence that it is his last in light of his arrest and humiliation and horrible fear of prison. Ephraim has support from his family and wife who will further incentivize him to stay clear of wrongdoing. And as letters from friends (Exhibit D) and wife (Exhibit C) indicate will have their support as well as he tries to rebuild his life. These letters are a remarkable demonstration of the fact that the defendant is much more than a criminal but a good husband, father, friend and member of his community. He made a terrible choice to commit this crime but it is not all that he is. If he is sentenced to a term of supervision and he again broke the law the Court would surely "throw the book" at him and it would be justified but we believe that giving him the chance to work, care for his family, start paying restitution and make amends for his crime is a more just outcome.

In sum, many factors in the case, including Ephraim's wife's health problems, his lack of significant profit from the crime and the defendant's rehabilitation militate in favor of a non-incarceration sentence.

*The Kinds of Sentences Available and the*
*Sentencing Range established in the Sentencing Guidelines*

The defendant has a Guidelines sentence range of 0 to 20 years in jail and an advisory guidelines range of 41 to 51 months.

The advisory Guidelines yield this overly harsh sentence without any consideration of the individualized factors of the defendant's case, including, among others; his role in the offense; his lack of large personal profit; the possible conditions of his confinement during a global pandemic. Instead, the Guidelines are driven largely by the loss amount. As the Second Circuit recognized, because

The Honorable Richard M. Berman
January 30, 2023
Page 7 of 9

the Guidelines rely so heavily on loss amount—an imprecise and wholly imperfect measurement of culpability—they deserve far less deference than other Guidelines provisions that are grounded in more sound policy rationale. Indeed, the Second Circuit has invited district courts to consider non-Guidelines sentences in all fraud cases:

> [T]he Commission could have approached monetary offenses quite differently. For example, it could have started the Guidelines calculation for fraud offenses by selecting a base level that realistically reflected the seriousness of a typical fraud offense and then permitted adjustments up or down to reflect especially large or small amounts of loss. Instead the Commission valued fraud (and theft and embezzlement) at level six, which translates in criminal history category I to a sentence as low as probation, and then let the amount of loss, finely calibrated into sixteen categories, become the principal determinant of the adjusted offense level and hence the corresponding sentencing range. This approach, unknown to other sentencing systems, was one the Commission was entitled to take, but its unusualness is a circumstance that a sentencing court is entitled to consider.
> *See* **United States v. Algahaim**, 842 F.3d 796, 800   (2d Cir. 2016).

In **Algahaim**, the Second Circuit endorsed what district judges rightfully and repeatedly have recognized in this district – the fraud guidelines are deeply, deeply flawed. *See, e.g.,* **United States v. Adelson**, 441 F. Supp. 2d 506, 515 (S.D.N.Y. 2006), aff'd 301 Fed. Appx. 93 at *1 (denouncing fraud guidelines as an "utter travesty of justice that sometimes results from the guidelines fetish with abstract arithmetic, and the harm that guidelines calculations can visit on human beings if not cabined by common sense."); *see also* **United States v. Gupta**, 904 F.Supp.2d 349, 350 (S.D.N.Y. 2012) (fraud guidelines are "plucked from the thin air [and] appear to be more the product of speculation, whim, or abstract number-crunching than of any rigorous methodology.").

In light of the criticism surrounding the fraud Guidelines, it is unsurprising that statistics provided by the Sentencing Commission confirm that courts rarely gave Guidelines sentences in fraud cases. By way of example, Judge Rakoff employed an multi-level downward variance in **United States v. Andrew Caspersen**, 16 CR 414, to a sentence of only 48 months in a fraud scheme that resulted in an over an actual $45,000,000 loss amount.

The Honorable Richard M. Berman
January 30, 2023
Page 8 of 9

Excluding cooperators, courts in this district gave below- Guidelines sentences in 54% of fraud cases in fiscal year 2019, the most recent year for which I have found statistics. See U.S. Sentencing Commission Statistical Information Packet for Fiscal Year 2019, Southern District of New York at Table 10 (https://www.ussc.gov/sites/default/             files/pdf/             research-and-publications/federal-sentencing-statistics/state-district-circuit/2019/2c19.pdf). And these numbers are obviously pre-pandemic.

In sum, a variance from the sentence guidelines in this case is appropriate. In addition to *Caspersen*, above, below are four additional cases in which defendants received large sentence variances from the guidelines based upon the specific facts in the case.

*The Need to Avoid Unwarranted Sentence Disparities*
*Among Similarly Situated Defendants*

The advisory Guidelines recommend for this first time, non-violent offender a range of between 41 and 51 months imprisonment. A survey of other cases results in the clear conclusion that a large downward variance is appropriate for the defendant. Of course, all cases are different but this case's facts are no more egregious than any of these cases. The point being that the defendant here deserves a substantial reduction from his Guidelines if some of these people received no jail at all and no more than 2 years in any case.

1. ***United States v. Emanuel Pantelakis*** 17 Cr. 87 (ALC), in this case the Court sentenced the defendant to one year and one day in jail for a $1.7 to 3 million fraud (Exhibit E).

2. ***United States v. Joshua Ikejimba***, 19 Cr. 318 (JMF), operated a complex fraud scheme  (Exhibit F is the Government's sentencing letter describing it) and he received 24 months, less than half of his suggested guideline range.

3. ***United States v Joseph Anthony Demaria***, 17 Cr. 569 (ER), was an organizer of a sophisticated scheme that had at least a $7.2 million loss and a much higher 97 to 121 month guidelines as present here; Demaria received a sentence of probation (Exhibit G).

4. ***United States v Bolaji Saibu***, 16 Cr. 0330 (VEC), was an organizer or leader of a $550,000 to 1.5 million fraud and he had a 78-97 month guideline

The Honorable Richard M. Berman
January 30, 2023
Page 9 of 9

range yet the Court took "a chance" on the defendant and gave him probation (Exhibit H at page 34).

Conclusion

The defendant committed a serious crime that harmed several people. But the Court should fashion a sentence that achieves the goals of justice and fairness and not one that simply metes out revenge or punishment.

As Ephraim will discuss at the sentence hearing, he has a sincere appreciation for his own wrongdoing. He has sought religious counsel and tried to better himself. He has strong family and community support. Between those facts there is comparatively little chance that he will again find himself before a Court facing criminal charges. In sum, the Court should look at the defendant in full and not only at the crime he committed. Based on the foregoing, we respectfully urge the Court to sentence the defendant primarily to the time already served in jail.

Respectfully submitted,

/s/ Alexei Schacht

_____

Alexei Schacht
Attorney for the Defendant
123 West 94th Street
New York, NY 10025
Tel: (646) 729-8180
Fax: (212) 504-8341
Email: alexei@schachtlaw.net

cc:    All counsel of record (via ECF and email)